ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-40140-01-JAR |
| ) | |
| RONALD L. JACKSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MEMORANDUM AND ORDER DENYING MOTION TO SUPPRESS

The Court now considers defendant Ronald Jackson's Motion to Suppress Search (Doc. 16). Defendant moves to suppress evidence obtained during a search of his person on October 8, 2005. The Court held an evidentiary hearing on defendant's motion on April 11, 2006. After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, defendant's motion to suppress is denied.

### I. Factual Background

On the evening of October 8, 2005, Officer Jason Judd of the Topeka Police Department was working a short shift on a project called "weed and seed," whereby officers conduct "saturation patrol" of a particular area of Topeka, in this case from 6th Street south to 21st Street and from Topeka Blvd. west to Washburn Avenue. While on patrol in this area, Officer Judd heard over the dispatch radio that a white Honda had been stolen near 21st and Washburn. Another patrol car spotted the Honda about two blocks from Officer Judd's location and attempted to pull the vehicle over. Instead, the vehicle did not stop and a chase ensued. Officer Judd provided secondary support during this chase, meaning he followed the first patrol car as it

pursued the Honda.

During the chase, Officer Judd observed the driver of the Honda driving recklessly and at one point toward the end of the chase, the passenger door came open for approximately three to five seconds. Officer Judd did not observe any person or object exit the vehicle. The pursuit lasted for approximately ten minutes and ended when the driver of the Honda pulled over near an alley on 20th Street and fled northbound on foot. Officer Judd and another officer pursued the driver and eventually secured him when he was found banging on the door of a residence. The officers handcuffed and arrested the driver and he was taken back to the police station.

Meanwhile, another police unit communicated to Officer Judd that the passenger of the Honda was secured. Officer Judd returned to where the Honda was parked on 20th Street and saw defendant lying on the ground next to the Honda with his hands cuffed behind his back. Defendant was yelling profanities. Officer Judd testified that the circumstances of the chase along with defendant's demeanor after the chase made him concerned for his safety.

Officer Judd helped defendant to his feet and defendant began to calm down. He asked defendant if there was anything on his person that could harm Officer Judd. Officer Judd does not recall whether defendant answered this question, but he nonetheless patted him down. He felt a hard metal object in defendant's right front trouser pocket and believed it was a pocket knife. Officer Judd testified that his training and experience, along with personal experience led him to this conclusion, as he owned a lot of pocket knives. When Officer Judd reached in defendant's pocket, he retrieved a pocket knife and he felt another metal object, which he discovered was an unfired 9mm ammunition cartridge. During the patdown, defendant told police that he had been kidnaped by the driver of the Honda.

The ammunition concerned Officer Judd given that he had witnessed the passenger side door open during the chase. He suspected that defendant had thrown a 9mm weapon out of the car at that time. Officer Judd contacted a friend of his who worked as a Washburn University police officer and asked him to check around the area where the door had opened for any weapons. That officer did not find any contraband in the area where the passenger door opened during the chase.

## II.  Discussion

### A.  *Reasonableness of the Search*

A patdown search is a "search" under the Fourth Amendment.[1]  Under *Terry v. Ohio*, "'[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.'"[2]  This type of search is permitted without a warrant and is limited to that which is necessary to discover weapons that might be used to harm the officer or others nearby.[3]  The purpose of this type of search is to allow the officer to conduct his investigation without fear of violence.[4]  The officer may take "reasonable precautions" to protect his safety during an investigative detention.[5]  The Court evaluates the validity of a patdown under the "totality of the

---

[1]*Terry v. Ohio*, 392 U.S. 1, 19 (1968); *United States v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003), *cert. denied*, 541 U.S. 911 (2004).

[2]*Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 24).

[3]*Id.*

[4]*Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

[5]*See United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004).

circumstances."[6]

Defendant initially argues that Officer Judd was not justified in believing that he was armed and presently dangerous to trigger a patdown search. According to defendant, he was cooperative with police and did nothing to arouse suspicion that he was armed and presently dangerous. But, Officer Judd testified that he believed that defendant could be armed and dangerous given the circumstances of the car chase and the fact that he was screaming profanities during the encounter. Specifically, Officer Judd was concerned that when the passenger side door opened during the car chase, defendant had attempted to throw something out of the vehicle.[7] He also reasonably suspected at this time that defendant was involved in stealing the vehicle, which is a crime that can be associated with weapons. Additionally, Officer Judd was concerned that despite being handcuffed, defendant could reach into his pocket for a weapon. Because Officer Judd intended to have defendant sit in his patrol car to answer questions, for his own safety, he decided to conduct a patdown search. The Court finds that under the totality of the circumstances there was a reasonable basis for believing that the defendant was armed and presently dangerous, therefore the patdown was justified.

### B. *Plain Feel Doctrine*

Defendant further contends that the ammunition should be suppressed because the plain feel doctrine did not allow for the seizure of the knife or, consequently, the ammunition. The Supreme Court has stated that there is a plain feel exception to the warrant requirement when an

---

[6] *See, e.g.*, *Manjarrez*, 348 F.3d at 887.

[7] The fact that no weapon or contraband was found after the fact by the Washburn University officer does not belie Officer Judd's reasonable suspicion at the time that defendant could have thrown such out of the vehicle when the door opened.

officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent.[8]  Upon such detection, the officer may reach into a pocket and seize the item.[9]

Defendant argues that the incriminating nature of the bullet could not have been immediately apparent to Officer Judd unless it was manipulated.  The government contends that Officer Judd felt an object that was immediately apparent to him as a weapon, therefore, he was justified in removing the pocket knife in defendant's right front trouser pocket.  It maintains that discovery of the unfired round of 9mm ammunition was incidental to the removal and seizure of the knife.

The government presented sufficient evidence to show that the pocket knife in this case was immediately recognizable to Officer Judd.  He testified that he felt a hard metal object in defendant's trouser pocket.  He believed this to be a pocket knife based on his training and experience, along with his personal experience involved in collecting such knives.  Only after reaching into defendant's pocket to retrieve the knife did Officer Judd feel the ammunition, which he then retrieved.  Officer Judd's discovery of the ammunition in this case was merely incidental to the seizure of the knife.  Because the search for the knife was lawful under *Terry* and the plain feel doctrine, the seizure of the ammunition was constitutional.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Suppress Search (Doc. 16) is **denied**.

**IT IS SO ORDERED.**

---

[8] *United States v. Thomson*, 354 F.3d 1197, 1200 (10th Cir. 2003) (discussing *Dickerson*, 508 U.S. at 375–76).

[9] *Id.*

5

Dated this 19th day of April 2006.

                                                **S/ Julie A. Robinson**

                                                **JULIE A. ROBINSON**
                                                **UNITED STATES DISTRICT JUDGE**

Memorandum and Order Denying Motion to Suppress, *United States v. Jackson*, 05-40140-JAR.